# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV2345SNL |
| ) | |
| VANESSA BOYDSTON, ET. AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

*Pro se* plaintiff has filed this §1983 action alleging that he has been denied adequate medical treatment for a "toe infection" in violation of the Eighth Amendment. He asserts that he has a continuous fungus infection resulting in painful thick, discolored toenails. He alleges that the infected toenails periodically fall off and that walking is extremely painful and difficult. This matter is before the Court on defendants Chandler, Conley, Sulltrop and CMS'[1] motion for summary judgment (#33), filed June 7, 2006 and defendant Czarnecki's motion for summary judgment (#37), filed June 19, 2006.[2] Responsive pleadings have been filed and the matter is now ripe for disposition.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing

---

[1]Correctional Medical Services

[2]These are the remaining defendants. Defendant Vanessa Boydston was dismissed from this action on May 15, 2006.

factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d.

2

915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

The facts relevant to the instant motion are largely undisputed.[3] During the relevant time-period, plaintiff was incarcerated within the MDOC's[4] penal system, including Farmington Correctional Center. Defendant Mary Chandler, R.N. is a registered nurse employed by defendant CMS and assigned to the health unit at Farmington Correctional Center during the relevant time-period. Defendant Elizabeth Conley, D.O. is a licensed physician, board-certified in family practice and employed by defendant CMS. During the relevant time-period, she served as the Missouri Regional Medical Director, overseeing all medical care provided by all physicians employed by CMS and working in the Missouri region. Defendant Jack Sulltrop, R.N. is a registered nurse employed by CMS. During the relevant time-period, Sulltrop worked as the Health Services Administrator at Cremer Therapeutic Community Release Center. He manages and oversees the daily operation of the medical unit at Cremer Therapeutic Community Release

---

[3]The Court notes that plaintiff has filed "objections" to the defendants' statement of uncontroverted medical facts; however, the plaintiff's objections are his opinion as to medical treatment needed, his speculation as to reasons for medical treatment chosen by the defendants, and/or hearsay statements of others. These are not properly based objections supported by facts evidenced in the record before the Court.

[4]Missouri Department of Corrections

3

Center. Defendant CMS is a private medical care entity providing medical care to inmates within the MDOC. It provides such medical services in accordance with MDOC's policies and procedures. CMS utilizes the services of independently contracted physicians to provided medical care for inmates of MDOC. Although CMS employed medical personnel make daily decisions regarding medical treatment, such decisions are made within the parameters of MDOC's Policy and Procedures Manual as regards the provision of health care services. MDOC has final policy making authority regarding all heath care services provided to inmates within its institutions. Defendants' Exhibit D.

Between January 2000 and April 2006[5] plaintiff requested and was seen by various medical personnel for complaints related to his toenails.[6] Beginning with his transfer from county jail to the MDOC, plaintiff's intake screening noted his complaint regarding "fungus on feet" and unidentified medication he took for two (2) weeks that he believed was ineffective. Plaintiff's Exhibit 1a. On January 11, 2000 he was prescribed Clotrimazole 1% topical cream (2 tubes) to be applied to both feet for 60 days. Plaintiff's Exhibit 1b. It is unclear where in the MDOC system plaintiff was housed from January 2000 until February 2005.

On November 9, 2001 plaintiff was seen in the medical unit complaining of a toenail fungus. A nurse examined his feet, diagnosed "athlete's foot (tinea pedis)[7], noted that plaintiff's

---

[5]Although defendants provide the medical records of plaintiff through April 2006, plaintiff's claim actually ceased as of December 2005 when he filed his complaint regarding the alleged denial of medical treatment for his toe infection.

[6]Plaintiff's medical records from January 10, 2000 through April 21, 2006. Plaintiff's Exhibits 1a-9b; Defendants' Exhibits GG-4 through G-11. The Court will cite to specific records when necessary. In instances wherein the parties have submitted duplicate exhibits, the Court's citation to only one (1) is for judicial efficiency and is not indicative of any bias.

[7]Defendants have submitted two (2) medical descriptions of athlete's foot:
"Athletes foot is a fungal (of or relating to the organism Fungi) infection of the foot which invades the outer layer of the skin with

toenails were thick and discolored, and referred plaintiff to a physician for further evaluation. Plaintiff's Exhibit 2. A physician examined plaintiff on November 21, 2001 and noted that "great toenails on both feet with deformity and thickness". The physician scheduled plaintiff for removal of toenail. However, no surgery was scheduled and on January 21, 2002 plaintiff submitted an MSR complaining that although surgery was supposed to be scheduled for his toenail, no surgery

---

the most frequent clinical findings of red and often cracked skin between the toes with itching and/or burning. Treatment consists of good hygiene of the feet, keeping the feet dry and the use of a medicated ointment/cream applied to the affected area; in severe infections, those causing open, weeping areas that also have a bacterial component and involve large portions of the foot, an oral medication might also be used for treatment.

A fungal infection of the toenail is also called onychomycosis, the fungus invades the nail, causing discoloration and often thickening of the nail, treatment is often cosmetic and may take over a year or more to produce an improvement in the condition and is not considered medically necessary in the majority of the cases, when treated the options include a medicated ointment directly to the nail, in severe cases oral medications or removal of the toenail are also treatment options." Defendants' Exhibit F - Declaration of Dr. Thomas Baker.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

"A toenail fungus is a common occurrence in the general population and is often found in conjunction with the presence of long-standing athlete's foot infections. Fungal nail infections can cause a nail to crack or thicken and may cause discoloration or streaking. Treatment is often for cosmetic relief and treatment of an infected nail area does not guarantee a cure. For mild infections, a medicated cream directly to the nail area is the treatment of choice along with treating any associated athlete's foot infection and maintaining good foot/skin hygiene and nail care. Major infections can be treated with oral medications with a 15-20% chance of reoccurrence within a year. In my experience, removal of an infected toenail is only indicated in a very limited number of cases, where severe infection has involved over 80% of the toenail. In there cases, the toenail is removed and the remaining nail bed area is treated to prevent the growth of a new nail." Defendants' Exhibit E - Declaration of Dr. Benjamin Smith Gaddy, II.

had yet been done. Plaintiff's Exhibit 15 (attached to his memorandum of law - Document #40). The MSR was referred to a doctor for review.

On March 6, 2002 plaintiff was examined by a physician in the medical unit regarding his complaint of toenail fungus. The physician noted "Onychomycosis of left and right great toe" and that plaintiff has pain and "enlargement and thickening of the left great toe". Finally, the physician notes that "Nicole will schedule to have toenails removed". Defendants' Exhibit G-6.

On March 19, 2002 defendant is examined by (former defendant) Ms. Boydston regarding his scheduled toenail removal procedure. She concludes that toenail removal is unnecessary and that all that is required is to have plaintiff's toenails trimmed in the medical unit. Defendants' Exhibit G-7.

Nine (9) months go by and plaintiff is next seen in the medical unit on December 23, 2002 complaining of nail fungus. The nurse examined plaintiff and noted "Patient presenting with a dark discoloration to the right foot 1st and 5th digits. Nails are dilcolored **[sic]**/though not painful or thickened. No open areas or s/s of secondary infection. Onset of problem "years" ago. She refers plaintiff to a physician for further evaluation for discoloration of the toe nails. Plaintiff's Exhibit 5.

On February 17, 2003 plaintiff submits an MSR for foot infection and on February 18, 2003 he was examined by an nurse practitioner. She noted that upon examination of his feet, "we discussed possible treatments and their outcomes, and that the treatment of fungus would result in the recurrence while in this type of community environment." She further notes that his feet "appear dry and blistering". She concludes that he has a fungal infection of toenails and feet. She prescribes Tolnaftate 1% cream (15gm tube) to be applied to his feet twice/day for 4 weeks. She instructed him on the proper cleaning of his feet, the application of bleach for control and

treatment of nail fungus, and notes that she will order "antifungal for feet". Plaintiff's Exhibit 7a.

There is no evidence submitted by either the plaintiff or the defendants as to any visits by the plaintiff to the penitentiary medical unit for the rest of 2003 or at any time during 2004; nor is there any evidence of any medical treatment for athlete's foot/fungal infection of feet and/or toenails for the rest of 2003 or at any time during 2004.

On or about February 17, 2005 plaintiff was transferred to Farmington Correctional Center (FCC) where upon he was examined for an intake screening. Plaintiff's primary medical complaint was fungal infection of the big toe. She noted that plaintiff "ambulates with a steady gait". She further noted that "great toe appears normal thickness no s\s of infection\color is good skin is warm and dry". Finally, she notes that "education given on importance of exercise and good hygiene". Defendants' Exhibit G-10.

Plaintiff is next seen in the FCC medical unit, on May 23, 2005, complaining of "itching, burning, scaling of skin between toes, on bottom of feet, or rash". Upon examination by defendant Czarnecki, it is noted that "Offender has no cracking or pealing of feet, wanting Lamasil for fungus on toe nail. Nail appears dark but not thick or pealing. Heard about Lamisil on TV." She instructs him to keep his nails trim and clean and to return to the medical unit if they get worse. No medicated cream was prescribed. Plaintiff's Exhibit 8.

Plaintiff revisits the FCC medical unit on June 1, 2005 complaining of a fungus infection to his feet. Defendant Chandler examined plaintiff and noted "toenails are unkept. Skin on feet intact and without edema, redness, or ulceration. Skin is clear and healthy in appearance. Per offender he does not want to cut toenails because he wants proof he has a fungus and wants to file an IRR[8] due to non-treatment of `nail fungus' Offender repeatedly is asking this nurse what is the

---

[8]Informal Resolution Request

7

name of the nail fungus. Offender states he came to medical 3 years ago and was told he needed to take medicine by mouth to get rid of this `fungus'. Offender has no evidence of athletes feet or any disease process active to his feet/toenails." Defendant Chandler instructed plaintiff on proper nail care and to return as needed to the medical unit. Defendants' Exhibit G-12.

On June 14, 2005 plaintiff is seen by a nurse in the FCC medical unit, who upon examination notes "fungus underneath toes on right foot". There is no other indication as to diagnosis or treatment. Plaintiffs' Exhibit 9a.

Meanwhile, on June 2, 2005 plaintiff had filed an IRR complaining that he was not receiving proper medical treatment for his feet fungus; i.e. that he was not receiving the "proper medication". Defendants' Exhibit G-17. The FCC Director of Nursing investigated and found that plaintiff had been seen by medical staff on May 23, 2005 and June 1, 2005 without any adverse findings regarding foot fungus. She noted that plaintiff was refusing to trim his toenails despite being instructed on the proper care of feet and toenails. She noted plaintiff's insistence on oral medication instead of topical creams. Ultimately, she found that plaintiff was being provided proper medical care and should submit a MSR for any further medical need. Defendants' Exhibit G-17.

On or about June 21, 2005 plaintiff filed an Offender Grievance complaining that he has had a foot fungus for three (3) years, that he has been seeing doctors and nurses who only treat him for athletes foot and prescribe creams that do not help, and that he needs a pill for an infection inside his toes. Defendants' Exhibit G-17. On or about July 20, 2005 the FCC Health Services Administrator responded to plaintiff's grievance. She noted that plaintiff had last received medical attention with regard to a fungal infection to his foot on February 18, 2003, almost two (2) years prior to coming to FCC. She further noted that since arriving at FCC,

plaintiff had been examined three (3) times and no fungal infection had been found. She concluded that treatment for a fungal infection was not need at that time and recommended that he continue to seek medical treatment as needed. Defendants' Exhibit G-17.

On August 3, 2005 plaintiff filed an Offender Grievance Appeal stating that he has been diagnosed with a fungal infection and that he has requested several times to see a doctor. On September 8, 2005 defendants Conley and Sulltrop responded to plaintiff's Offender Grievance Appeal. Upon review of his medical records, they noted that there were no clinical indications by a nurse to refer him to a physician; that nail fungus was considered to be "a cosmetic issue more than a medical problem that does not demand treatment unless significant complications exist"; and that in their opinion, plaintiff was receiving proper medical care from the staff. Again, they encouraged him to seek medical care as needed. Defendants' Exhibit G-17.

On April 14, 2006 plaintiff was examined by a physician who noted that plaintiff had complained of fungal infection for four (4) years, that he refused to cut his toenails, that he wanted oral medication, and that he had pain when he played sports. Upon examination, the physician found that plaintiff's great toenails were thick and discolored, suffered from poor upkeep, and need to be trimmed. He found that the fungus mostly involved the big toenails. The physician instructed plaintiff on good foot hygiene, including trimming his toenails, and ordered Betadine foot soaks daily for seven (7) days with a follow-up appointment. Defendants' Exhibit G-13.

Plaintiff had Betadine foot soaks as ordered on April 14, 2006; April 17, 2006; April 18, 2006; April 19, 2006; April 20, 2006; April 21, 2006; April 22, 2006; and April 23, 2006. Defendants' Exhibit G-14.

On April 21, 2006 plaintiff was examined again by a physician for a follow-up related to his foot fungus. The physician noted that plaintiff's nails had improved since having the foot baths; that trimming the big toenails resulted in about 30-405 of distal big toenails; and that both feet have a small amount of scaling on the bottom and a little cracking of the skin. The physician's diagnosis was a mild fungal infection of the great toenails with a small amount of athlete foot fungus on the bottom of the feet. Plaintiff was again instructed on proper foot hygiene, to use Tolnaftate cream as directed to both feet; to wear clean socks daily, to continue Betadine soaks weekly as needed for six (6) weeks to help soften the nails for trimming, and to obtain an emery board to file the nails as needed. The physician discussed the reasons not to use an oral medication at that time, including side effects, and that if plaintiff continued the regimen as instructed, he would see improvement in his overall foot condition. Defendants' Exhibit G-15.

To establish that the defendants' conduct violated the Eighth Amendment's prohibition against cruel and unusual punishment, White must demonstrate that the individual defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Meloy v. Bachmeier, 302 F.3d. 845, 848 (8th cir. 2002); Robinson v. Hager, 292 F.3d. 560, 563 -64 (8th Cir. 2002); Jolly v. Knudsen, 205 F.3d. 1094, 1096 (8th Cir. 2000); Logan v. Clark, 119 F.3d. 647, 649 (8th Cir. 1997). An inmate must establish both the objective and subjective components of a §1983 inadequate medical treatment claim; i.e., must show both that the inmate had an objectively serious medical need and that the defendants actually knew of and deliberately disregarded that need. Meloy, at 848; Robinson, at 564; Jolly, at 1096; Coleman v. Rahija, 114 F.3d. 778, 784 (8th Cir. 1997); *see also*, Farmer v. Brennan, 511 U.S. 825 (1994); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. at 105. Deliberate indifference may be manifested by the manner in which prison doctors respond to an inmate's

medical needs or by prison officials intentionally denying or delaying access to medical care, or interfering with an inmate's proscribed medical treatment. Meloy, at 849 *citing* Estelle v. Gamble, 429 U.S. at 104-05; Roberson v. Bradshaw, 198 F.3d. 645, 647 (8th Cir. 1999).

A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Coleman, at 784 *quoting* Camberos v. Branstad, 73 F.3d. 174, 176 (8thCir. 1995); *see also*, Simmons v. Cook, 154 F.3d. 805, 807-08 (8th Cir. 1998) *quoting* Moore v. Jackson, 123 F.3d. 1082, 1086 (8th Cir. 1997)("A medical need is serious if it is obvious to the layperson or supported by medical evidence."). When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, "the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." Keeper v. King, at 1314-15; Coleman, at 784; Crowley v. Hedgepeth, 109 F.3d. 500, 502 (8th Cir. 1997). Furthermore, to impose liability, the inmate must demonstrate that the delay was prompted by "obduracy and wantoness, not inadvertance or error in good faith." Ruark v. Drury, 21 F.3d. 213, 216 (8th Cir. 1994) *quoting* Whitley v. Albers, 475 U.S. 312, 319 (1986). "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Beyerbach v. Sears, 49 F.3d. 1324, 1326 (8th Cir. 1995). A failure by an inmate to place such supporting medical evidence in the record to establish the detrimental effect of the alleged delay in medical treatment "precludes a claim of deliberate indifference to medical needs." Coleman, at 784 *citing* Crowley, at 502.

In order to satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show that the prison official(s) had actual knowledge of, yet disregarded, an

excessive risk to the inmate's health. Keeper v.King, at 1314 *quoting* Logan v. Clarke, 119 F.3d. 647, 649 (8th Cir. 1997); *see also*, Farmer v. Brennan, 511 U.S. at 837. A prison official may be liable under the Eighth Amendment if s/he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." Coleman, at 785 *citing* Farmer v. Brennan, 511 U.S. at 847. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." Coleman, at 785 *quoting* Long v. Nix, 86 F.3d. 761, 765 (8th Cir. 1996). A prison official's requisite knowledge may be established circumstantially or from the fact that the seriousness of the medical need was obvious. Coleman, at 786; Boyd v. Knox, 47 F.3d. 966, 968 (8th Cir. 1995).

Inherent in the concept of "deliberate indifference" is actual knowledge of a serious risk to the inmate's health by the prison official, and the prison official's conscious choice to disregard that risk; consequently, mere negligence or a claim for medical malpractice cannot be sustained under the Eighth Amendment. Robinson, at 647; Dulaney v. Carnahan, 132 F.3d. 1234, 1239 (8th Cir. 1997); Smith v. Jenkins, 919 F.2d. 90, 93 (8th Cir. 1990). A mere disagreement with a course of treatment or medical diagnosis fails to state an Eighth Amendment medical claim. Smith v. Marcantonio, 910 F.2d. 500, 502 (8th Cir. 1990); Lair v. Oglesby, 859 F.2d. 605, 606 (8th Cir. 1988). "The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Jolly, at 1096 *quoting* Estate of Rosenberg v. Crandell, 56 F.3d. 35, 37 (8th Cir. 1995).

Finally, nothing in the Eighth Amendment precludes prison doctors from exercising their independent medical judgment. Long v. Nix, 86 F.3d. 761, 765 (8th Cir. 1996). Inmates do not have a constitutional right to any particular type of treatment. Long v. Nix, at 765. "Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, at 765 (citations omitted).

Plaintiff contends that the individual defendants have failed to properly treat his "toenail infection" by prescribing an oral medication. Plaintiff has failed to offer any affirmative evidence, medical or otherwise, which rebuts the defendants' voluminous evidence of regular and prompt evaluations and treatments of plaintiff's complaints regarding his feet/toenails. Although multiple contacts with medical personnel do not always preclude a finding of deliberate indifference, defendants Chandler, Conley and Sulltrop's actions in this case cannot be said to reflect deliberate indifference. *See*, Jolly v. Knudsen, at 1097 *citing* Warren v. Fanning, 950 F.2d. 1370, 1373 (8th Cir. 1991). The evidence, when viewed most favorably to White, demonstrates that over a number of years, defendants and others, attempted to treat White on numerous occasions with acceptable conventional medical protocol according to their medical findings. The fact that various treatments were offered to plaintiff over an extended period of time demonstrates that the defendants were not consciously disregarding his medical complaints regarding his feet/toenails. The evidence further shows that the objective medical findings support the defendants' medical judgment in opining that plaintiff did not meet the criteria for oral medication to treat his symptoms. The evidence further shows that plaintiff did not follow the proscribed treatment regimen including keeping his feet clean and trimming his toenails. Plaintiff has failed to provide any affirmative evidence other than his own disagreement with the defendants' course of medical

treatment for his athletes foot/fungal infection. Plaintiff offers no evidence disputing that the defendants' treatment plans were standard, conventional and medically acceptable treatment options for plaintiff's problem. Plaintiff has failed to show that these defendants were deliberately indifferent to plaintiff's medical needs in violation of the Eighth Amendment. Plaintiff has failed to present a triable issue of fact evidencing a violation of his Eighth Amendment rights. White's disagreement with the individual defendants' course of medical treatment does not establish deliberate indifference and is not actionable.

As for as defendant CMS, it is unclear as to the exact nature of plaintiff's claim. If his claim against defendant CMS is based on *respondeat superior* because CMS is the individual defendants' employer, such claim fails because the doctrine of *respondeat superior* is inapplicable in §1983 actions. Givens v. Jones, 900 F.2d. 1229, 1233 (8th Cir. 1990); Wilson v. City of Little Rock, 801 F.2d. 316, 322 (8th Cir. 1986); Martin v. Sargent, 780 F.2d. 1334. 1338 (8th Cir. 1985). If plaintiff is attempting to demonstrate some type of policy or practice by defendant CMS regarding his treatment; i.e. failure to prescribe an oral medication; this claim also fails. Plaintiff fails to state an actionable claim because defendant CMS is not the final policy-making authority; the State of Missouri maintains a non-delegable duty to provide medical care to all persons confined within the institutions maintained by the MDOC. *See*, Crooks v. Nix, 872 F.2d. 800 (8th Cir. 1989).[9] Summary judgment will be granted to defendant CMS.

---

[9]Furthermore, plaintiff has failed to provide sufficient affirmative evidence of a widespread custom or application of a policy not to treat athletes foot/fungal infection with an oral medication. All he has provided is the declaration of another inmate who was treated by a CMS doctor (not named in this lawsuit) who he claims told him that she (the doctor) was not allowed to treat toe nail infections with medication. Plaintiff's Exhibit 21. Firstly, there is no evidence that this inmate had a "fungal infection of the toe nail" except for his self-diagnosis. Secondly, this declaration as far as what the doctor said is hearsay and not admissible; therefore, cannot be considered by this Court on a summary judgment motion matter. Thus, there is no affirmative evidence before this Court demonstrating any custom or policy implemented by defendant CMS

As for defendant Czarnecki's motion for summary judgment, all findings by this Court, including review of the relevant caselaw, is equally applicable to this defendant. Defendant Czarnecki is a Licensed Practical Nurse. She examined plaintiff on only one (1) occasion: May 23, 2005. Defendants' Exhibit G-11. She noted that he had no cracking or open skin, no drainage, rash or signs of infection. Plaintiff had a dark toenail that was not thick or peeling. She noted that plaintiff wanted "Lamisil" because he had seen a television commercial. She was not authorized to prescribe oral medication, nor remove his toenail(s). She instructed him to keep his feet clean, to trim his toenails, and to return to the medical unit if his symptoms changed. Plaintiff's claim against this defendant is nothing more than a mere disagreement with her medical advice as to treatment. Plaintiff's claim is not actionable under §1983.

In light of the above findings, no material issues of fact exist as to the defendants' course of conduct regarding plaintiff's medical treatment, and as a matter of law, summary judgment will be granted to all remaining defendants.

Dated this ___14th___ day of February, 2007.

                                                  */s/ Stephen N. Limbaugh*
                                                SENIOR UNITED STATES DISTRICT JUDGE

---

regarding nonuse of oral medication in the treatment of toe nail fungal infections or athletes foot.